**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NUMBER: 18-60202-MGC**

JOSHUA APARICIO,
individually and on behalf of all
others similarly situated,                                     **CLASS ACTION**

    Plaintiff,                                                       **JURY TRIAL DEMANDED**

v.

STRAX WELLNESS CENTER, LLC
d/b/a STRAX REJUVENATION,
a Florida limited liability company,

    Defendant.
_____/

**FIRST AMENDED CLASS ACTION COMPLAINT[1]**

    Plaintiff Joshua Aparicio brings this class action against Defendant Jade Holdings Group LLC, and alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**NATURE OF THE ACTION**

    1.    This is a putative class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, ("TCPA"), arising from Defendant's knowing and willful violations of the TCPA.

    2.    Defendant owns and operates a cosmetic surgery institute located in Broward County, Florida.

    3.    Despite having been previously sued for violating the TCPA, Defendant continues to

---

[1] Through this amendment, Plaintiff hereby drops Strax Wellness Center, LLC d/b/a Strax Rejuvenation as a Defendant in this case, without prejudice.

1

engage in unsolicited telemarketing directed towards prospective customers, with no regard for consumers' privacy rights.

4. This case arises from the transmission of a telemarketing text message to Plaintiff's cellular telephone promoting Defendant's cosmetic surgery services.

5. Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily lives of thousands of individuals. Plaintiff also seeks statutory damages on behalf of himself and members of the Class, as defined below, and any other available legal or equitable remedies.

## JURISDICTION AND VENUE

6. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a national class, which will result in at least one Class member belonging to a different state than Defendant. Plaintiff seeks up to $1,500.00 in damages for each call in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA").

7. Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendant provides and markets its services within this district thereby establishing sufficient contacts to subject it to personal jurisdiction. Further, Defendant's tortious conduct against Plaintiff occurred within this district and, on information and belief, Defendant has sent the same text message complained of by Plaintiff to other individuals within this judicial district, subjecting Defendant to jurisdiction here.

## PARTIES

8.      Plaintiff is a natural person who, at all times relevant to this action, was a resident of Broward County, Florida.

9.      Defendant is a Florida limited liability company with its principal place of business located at 4300 North University Drive, #E200, Fort Lauderdale, FL 33351.  Defendant directs, markets, and provides business activities throughout the State of Florida.

## THE TCPA

10.     The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent.  47 U.S.C. § 227(b)(1)(A).

11.     The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

12.     The TCPA exists to prevent communications like the ones described within this Complaint.  *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

13.     In an action under the TCPA, a plaintiff must show only that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice."  *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

14.     The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA.  According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and

inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

15.	In 2012, the FCC issued an order further restricting automated telemarketing calls, requiring "prior express written consent" for such calls to wireless numbers. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012)(emphasis supplied).

16.	To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and [the plaintiff] having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

17.	The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

18.	"Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id*. (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

19.	"'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii) & 47 C.F.R. § 64.1200(f)(12)); *In re Rules and Regulations*

*Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

20.     The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future*. *Id*.

21.     In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

22.     If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulaions Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

23.     Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) ("The FCC has determined that a text message falls within the meaning of 'to make any call' in 47 U.S.C. § 227(b)(1)(A)").

24.     As recently held by the United States Court of Appeals for the Ninth Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp.*, No.

5

14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

**FACTS**

25.     On September 27, 2016, October 28, 2016, December 20, 2016, and December 27, 2016, Defendant, using an automated text-messaging platform and short-code hosted by mobile marketing company Trumpia, Inc., caused the following text messages to be transmitted to Plaintiff's cellular telephone number ending in 3030 ("3030 Number"):

> 990-00
>
> Text Message
> Sep 27, 2016, 13:02
>
> Strax Rejuvenation:Non Surgical special give us 15min of your lunch time & we will give you years back Call(954)281-4112 t.zip.ma/3hHub Txt STOP to OptOut
>
> Oct 28, 2016, 09:17
>
> Strax Rejuvenation:Dont Miss!1,2,3 Best financing to get you closer to the procedure you always wanted Call(954)281-4112 t.zip.ma/3oKeK Txt STOP to OptOut
>
> Dec 20, 2016, 09:27
>
> Strax Rejuvenation:Going to New Years Eve party? Get $25 off each syringe of fillers & wrinkle reducers Don't Miss! Call Today 954-281-4112 Txt STOP to OptOut
>
> Dec 27, 2016, 10:04
>
> Strax Rejuvenation:Going to New Years Eve party? Get $25 off each syringe of fillers & wrinkle reducers

26.     Defendant's text messages constitute telemarketing because they promoted Defendant's

cosmetic surgery services.

27. The number identified in the text messages (954-281-4112) is a number owned and operated by Defendant.

28. Plaintiff received the subject text messages within this judicial district and, therefore, Defendant's violation of the TCPA occurred within this district. Upon information and belief, Defendant caused other text messages to be sent to individuals residing within this judicial district.

29. At no point in time did Plaintiff provide Defendant with his express written consent to be contacted by text messages using an ATDS.

30. Plaintiff is the subscriber and user of the 3030 Number.

31. The impersonal and generic nature of Defendant's text messages, and use of a short-code, establishes that Defendant utilized an ATDS in transmitting the messages.

32. Specifically, upon information and belief, Defendant utilized a combination of hardware and software systems to send the text messages at issue in this case. The systems utilized by Defendant have the capacity to equipment that has the *capacity* to store telephone numbers, using a random or sequential generator, and dial such numbers.

33. Defendant's unsolicited text message caused Plaintiff actual harm, including invasion of her privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendant's text message also inconvenienced Plaintiff and caused disruption to her daily life. *See Patriotic Veterans, Inc. v. Zoeller*, No. 16-2059, 2017 WL 25482, at *2 (7th Cir. Jan. 3, 2017) ("Every call uses some of the phone owner's time and mental energy, both of which are precious.").

## CLASS ALLEGATIONS

### PROPOSED CLASS

34. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of

himself and all others similarly situated.

35. Plaintiff brings this case on behalf of the below defined Class:

> **All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a text message, from Defendant or anyone on Defendant's behalf, to said person's cellular telephone number, advertising Defendant's services.**

36. Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the Class members number in the several thousands, if not more.

### NUMEROSITY

37. Upon information and belief, Defendant has placed automated calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

38. The exact number and identities of the Class members are unknown at this time and can be ascertained only through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

### COMMON QUESTIONS OF LAW AND FACT

39. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

> (1) Whether Defendant made non-emergency calls to Plaintiff's and Class members' cellular telephones using an ATDS;
>
> (2) Whether Defendant can meet its burden of showing that it obtained prior

8

express written consent to make such calls;

(3) Whether Defendant's conduct was knowing and willful;

(4) Whether Defendant is liable for damages, and the amount of such damages; and

(5) Whether Defendant should be enjoined from such conduct in the future.

40. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely transmits text messages to telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

41. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

42. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class, and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

### SUPERIORITY

43. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be

unduly burdened by individual litigation of such cases.

44. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

## COUNT I
### Violations of the TCPA, 47 U.S.C. § 227(b)
**(On Behalf of Plaintiff and the Class)**

45. Plaintiff re-alleges and incorporates paragraphs 1-44 above, as if fully set forth herein.

46. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

47. The TCPA defines an "automatic telephone dialing system" (hereinafter "ATDS") as "equipment which has the **capacity** – (A) to store **or** produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id*. at § 227(a)(1) (emphasis added).

48. The statutory definition of an ATDS contemplates autodialing equipment that either stores *or* produces numbers.

49. Thus, under the plain language of the statute, an ATDS is equipment that has the *capacity* to store telephone numbers, using a random or sequential generator, and dial such numbers.

50. Defendant – or third parties directed by Defendant – used equipment having the capacity to store telephone numbers using a random or sequential generator, and dial such numbers.

51. These calls were made without regard to whether Defendant had first obtained express permission from the called party to make such calls. In fact, Defendant did not have prior express consent to call the cell phones of Plaintiff and the other members of the putative Class when its calls were made.

52. Defendant has, therefore, violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express consent.

53. As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls. *Id*.

**WHEREFORE**, Plaintiff, Joshua Aparicio, on behalf of himself and the other members of the Class, prays for the following relief:

a. A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

b. A declaration that Defendant's violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, were willful and knowing;

c. An injunction prohibiting Defendant from using an automatic telephone dialing system to call and text message telephone numbers assigned to cellular telephones without the prior express consent of the called party;

d.  An award of actual, statutory damages, and/or trebled statutory damages; and

e.  Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff and Class members hereby demand a trial by jury.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone numbers associated with the Defendant and the communication or transmittal of the text messages as alleged herein.

Date: March 22, 2018

Respectfully submitted,

**HIRALDO P.A.**

*/s/ Manuel S. Hiraldo*_____
Manuel S. Hiraldo
Florida Bar No. 030380
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Email: mhiraldo@hiraldolaw.com
Telephone: 954.400.4713
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 22, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

By: */s/ Manuel S. Hiraldo*
Manuel S. Hiraldo, Esq.
HIRALDO P.A.
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Florida Bar No. 030380
mhiraldo@hiraldolaw.com
Telephone: 954.400.4713